# United States Court of Federal Claims
No. 11-253 C
June 7, 2013

| | |
|---|---|
| **ROBERT E. PEARL,** | |
| *Plaintiff*, | RCFC 52.1; RCFC 12(b)(6); Military disability pay; 10 U.S.C. § 1201; 10 U.S.C. §1203; Arbitrary and capricious; Substantial evidence |
| v. | |
| **UNITED STATES OF AMERICA,** | |
| *Defendant*. | |

*Aaron L. Parker and Christine E. Lehman*, Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., Washington, DC, for plaintiff.

*Michael D. Snyder*, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

## OPINION *and* ORDER

**Block,** *Judge*.

Plaintiff was honorably discharged from the United States Army ("Army") on April 30, 2005, with a 10 percent disability rating. This rating entitled him to severance pay under 10 U.S.C. § 1212. AR at 87, 991. The United States Army reviewed plaintiff's rating determination and affirmed it on February 15, 2011. *Id.* at 1-2. Plaintiff challenges this determination alleging that the Army was arbitrary and capricious in its decision-making, improperly rated his post-traumatic stress disorder (PTSD), and erred in finding that his PTSD and back pain were not "combat-related." Compl. at A-H. Plaintiff avers that his low PTSD rating resulted in errant classification during his separation from the Army. He contends the Army, to use the language of the statute, should have "retired" him pursuant to 10 U.S.C. § 1201, rather than "separated" him pursuant to 10 U.S.C. § 1203. The result would have been "retired pay" compensation under 10 U.S.C. § 1401 rather than less generous "severance pay" under § 1212.

Before this court are defendant's motion to dismiss, *see* Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), and the parties' cross-motions for judgment on the administrative record, *see* RCFC 52.1. As will be addressed, the motion to dismiss is based on an apparent misunderstanding as to what claims plaintiff alleges in his complaint—a misunderstanding that has subsequently been clarified by the parties. Consequently, the bulk of this opinion will be devoted to the parties' cross-motions for judgment on the administrative record.

In adjudicating the cross-motions for judgment on the administrative record, it is important to recall that this court is not conducting a de novo review. *Walls v. United States*, 582 F.3d 1358, 1367 (Fed. Cir. 2009). That is to say, the court will not make independent factual assessments of medical evaluations or determine which party is right and which is wrong with regard to the facts of the case. Those facts are provided in the administrative record. Rather, pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1), the court will review the decisions of the applicable government agencies, as found in the record, under the "arbitrary and capricious" standard of review.[1] *Walls*, 582 F.3d at 1367-68. This standard respects agency expertise while protecting the individual from despotic governmental conduct. To be sure, that is one of this court's roles – to serve as a check on irrational or arbitrary government conduct in military medical disability cases. Under the standard, this court must find the Army's decision was not arbitrary, capricious, unsupported by substantial evidence, or contrary to law. *Id.*

For the reasons stated below, defendant's motion to dismiss is denied. Plaintiff's motion for judgment on the administrative record is denied, and, conversely, defendant's motion is granted.

### I. THE ARMY PHYSICAL DISABILITY EVALUATION SYSTEM

The Secretary of the Army is authorized to retire or discharge with severance pay a soldier who is unfit to perform his military duties because of physical disability. 10 U.S.C. §§ 1201-22; Dep't of the Army, *Army Reg. 635-40, Physical Evaluation for Retention, Retirement, or Separation* ¶ 1-1. You might expect, given the many layers of bureaucracy in the modern Army, that several layers of fact finders exist to determine a medical diagnosis—here a disability. If so, you will not be disappointed.

The name for this bureaucracy is the Army Physical Disability Evaluation System ("DES") and it determines whether a particular soldier is physically unfit for duty. *Army Reg. 635-40*, ¶ 1-1. The DES consists of (1) a medical evaluation board (the "MEB"), (2) a physical evaluation board (the "PEB"), and (3) the United States Army Physical Disability Agency (the "USAPDA"). *Id.* at ¶ 2-10. Moreover, after the DES process is complete, a service member may seek review of a disability determination by the Physical Disability Board of Review (the "PDBR" or "Board of Review"). 10 U.S.C. § 1554; U.S. Dep't of Def., *Instr. 6040.44, Lead DoD Component for the Physical Disability Board of Review (PDBR)* ¶ 4(a) (June 27, 2008).

The first step in the DES process is the medical evaluation board. The MEB is composed of two or more physicians, one of whom is a senior medical officer. Dep't of the Army, *Army Reg. 40-400, Patient Administration* ¶ 7-3 (2010). These physicians document soldiers'

---

[1] *See* Administrative Procedure Act (the "APA"), 5 U.S.C. § 706. The Supreme Court has called this standard of review "narrow." *F.C.C. v. Fox Television Stations, Inc.*, 129 S. Ct. 1800, 1810 (2009) ("[A] court is not to substitute its judgment for that of the agency and should uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.") (internal quotations omitted). Although the APA explicitly cited only in the portion of the Tucker Act pursuant to which this court exercises jurisdiction in bid protests, *see* 28 U.S.C. § 1491(b)(4), "it has become well established that judicial review of decisions of military corrections boards is conducted under the APA" standard of review. *Walls*, 582 F.3d at 1367 (citing *Brown v. United States*, 184 Ct. Cl. 501 (1968)).

"medical status[es] and duty limitations." *Id.* at ¶ 7-1. They also compile an extensive case file on each soldier for use throughout the DES process. *Id.* at ¶ 7-9, 7-11. If a soldier is found unfit, the MEB will refer him to the next level of bureaucracy—the physical evaluation board. *Army Reg. 635-40*, ¶ 4-10.

The PEB is a three-member panel of "experienced officers who have been trained on adjudication standards and procedures." *Id.* at ¶ 4-17(b). These officers investigate the soldier's disability and evaluate it against the physical requirements of the soldier's duties. *Id.* at ¶ 4-17(a). Using this information, the PEB establishes "the eligibility of a [s]oldier to be separated or retired because of physical disability." *Id.* at ¶ 4-17(a)(4). If the PEB determines that the soldier is unfit for duty because of his physical disability, the PEB then rates the soldier's disability using a modified version of the Department of Veterans Affairs Schedule for Rating Disabilities (the "ratings schedule"). *Id.* at ¶ 4-19(i).

The ratings schedule assigns particular conditions or categories of conditions a disability rating. These ratings range from 10 percent to 100 percent in multiples of ten. *Schedule of Ratings – Neurological Conditions and Convulsive Disorders*, 38 C.F.R. § 4.124a. A soldier with a rating of at least 30 percent is eligible for "retirement" under 10 U.S.C. § 1201 and "retired pay" under 10 U.S.C. § 1401. A soldier with a rating of less than 30 percent is eligible for "separation" under 10 U.S.C. § 1203 and "severance pay" under 10 U.S.C. § 1212. These classifications have significant pecuniary consequences.

The PEB also determines whether the soldier's disability is "combat-related" under 26 U.S.C. § 104. *Army Reg. 635-40*, ¶ 4-19(k)(2)(b). This classification entitles soldiers to exclude some compensation from their gross income for federal tax purposes. An injury is considered combat-related if it "is incurred as a direct result of armed conflict, while engaged in extrahazardous service, or under conditions simulating war, or . . . is caused by an instrumentality of war." 26 U.S.C. § 104; *see also Army Reg. 635-40*, ¶ 4-19(k)(2). Because a combat-related injury is denoted in Blocks 10 A and C of the form detailing the PEB's proceedings, it is referred to as a "10 A/C characterization."

The PEB operates in two stages, informal and formal. First, the informal PEB examines the case file and obtains additional evidence if necessary. *Army Reg. 635-40*, ¶ 4-20(a). These informal procedures ensure rapid processing and "reduce the overall time required to process a case through the disability evaluation system." *Id.* After ensuring the case file is complete and correct, the informal PEB determines the soldier's fitness. *Id.* If the soldier disagrees with the informal PEB's decision, the process moves to the second stage -- review by a formal PEB. *Id.* at ¶ 4-21(a). Formal PEB adjudication more closely resembles a traditional court case. The soldier is entitled to an attorney and he can present new evidence, including witness testimony, which the formal PEB must consider when determining fitness. *Id.* at ¶ 4-21(a)-(b).

If the soldier disagrees with the formal PEB's decision, he can submit a statement of rebuttal to the United States Physical Disability Agency, or, as the court abbreviated above, the USAPDA. *Id.* at ¶ 4-22(a)(3). The USAPDA determines whether the findings and recommendations of both the MEB and the PEB were "just, equitable, consistent with the facts, and in keeping with the provisions of law and regulations." *Id.* at ¶ 4-22(b)(3). The USAPDA confines this analysis to the case records and proceedings, as well as related evidence. *Id.* at ¶ 4-

22(b). After reviewing the case, the USAPDA can concur with or remand to the PEB, issue its own findings and recommendations, or refer the case to a higher review board. *Id.* at ¶ 4-22(c).

A soldier with a combined disability rating of 20 percent or less who is not found eligible for retirement can then appeal the findings of the USAPDA to the Board of Review. *Instr. 6040.44*, Enclosure 3 ¶¶ 1-2. The Board of Review was established in 2008 to "reassess the accuracy and fairness of the combined disability ratings assigned Service members . . . and to recommend corrections where discrepancies and errors in such ratings exist." *Id.* at Enclosure 3 ¶ 1; *see also* 10 U.S.C. § 1554. The Board of Review uses the complete case record as well as any new evidence the parties present to review the soldier's disability rating. *Instr. 6040.44*, at Enclosure 3 ¶ 5(a), (d). Depending on its findings, the Board of Review recommends that the Secretary of the Army either affirm or modify the soldier's disability rating. *Id.* at Enclosure 3 ¶¶ 4(e), 5(g).

With this multifaceted and somewhat convoluted administrative framework in mind, the court turns to the facts of this case, including the timeline of plaintiff's reported medical conditions.

## II. FACTUAL BACKGROUND

Plaintiff, then a sergeant major in the United States Army, was deployed to Kuwait in 2003 as part of Operation Enduring Freedom. AR at 4, 193-94. During his deployment, on May 15, 2003, plaintiff reported chest and back pain to his camp's medical clinic. *Id.* at 461-62. The doctors suspected he might have shingles, and plaintiff was evacuated to Landstuhl, Germany, and then to the United States. *Id.* at 4; 380; 443.

On June 25, 2003, plaintiff underwent a medical evaluation at the Behavioral Science Department at Fort McPherson, Georgia. In that evaluation, plaintiff indicated he did not think he had any combat-related emotional problems. *Id.* at 1007. On July 27, 2003, he underwent a mental health intake review. *Id.* at 1003. Both plaintiff and the counselor conducting the review, Gary D. Cabbage, thought plaintiff handled combat well and plaintiff was not diagnosed with any mental problems. *Id.* at 1003-04. Plaintiff also told Mr. Cabbage that his marriage and home life were doing well. *Id.* at 1003.

On November 19, 2003, then about half a year after he returned to the United States, plaintiff told a patient administrator at Fort McPherson that he injured his back jumping off a wall in a firefight on or about May 5, 2003. *Id.* at 134. While clinical notes from July and September 2003 mention a firefight, this was the first time the reference appeared in an official statement. *Id.* at 134; 378-79.

On December 1, 2003, plaintiff met again with Mr. Cabbage. *Id.* at 1001-02. Plaintiff revealed he and his wife separated in October and a divorce was pending. *Id.* at 1001. Mr. Cabbage noted that plaintiff was severely depressed, intensely angry about his divorce, and concerned about his future in the Army. *Id.* at 1001-02.

On January 7, 2004, plaintiff was reassigned to a transportation unit at Fort Rucken, Alabama. *Id.* at 191. Shortly before this time, he began seeing a clinical psychologist, Dr. Jerry M. Bynum, at a Veterans Affairs Mental Health Clinic. *Id.* at 523. Dr. Bynum reported that plaintiff suffered from insomnia, irritability, depression, and poor frustration tolerance. *Id.* at

523.  While Dr. Bynum initially diagnosed plaintiff with "Depression NOS[2] and Acute Stress Disorder," the diagnosis was later changed to post traumatic stress disorder, or PTSD. *Id.* at 523.

Plaintiff was evaluated by a medical evaluation board for back pain on July 6, 2004. *Id.* at 129-30.  The MEB diagnosed him with thoracic back pain and recommended that his case be forwarded to a physical evaluation board to determine fitness for duty. *Id.*

On August 23, 2004, plaintiff's commanding officer ("CO") submitted an evaluation to the PEB. *Id.* at 110-11.  He reported that plaintiff's back pain prevented him "from carrying common equipment required of an Infantry soldier," performing industrial tasks, and sometimes resulted in plaintiff leaving work early. *Id.* at 110.  The CO also stated that plaintiff "suffered from post operational stress." *Id.*  Even with these limitations, the CO found that plaintiff's duty performance was excellent, that he helped others within the unit, and that he "volunteered his leadership and mentorship to the local ROTC program." *Id.*

On October 29, 2004, plaintiff underwent a physical profile conducted by profiling officers at his medical treatment facility.  Dep't of the Army, *Army Reg. 40-501, Standards of Medical Fitness* ¶ 7-6 (2008).  A physical profile indicates overall functional capacity. *Id.* at ¶ 7-3(b).  The profile considers six factors in the following order: physical capacity, upper extremities, lower extremities, hearing and ears, eyes, and psychiatric. *Id.* at 7-3(c).  Each factor is given a rating between 1 and 4, with "1" representing a high level of medical fitness, and "4" representing "one or more medical conditions or physical defects of such severity that performance of military duty must be drastically limited." *Id.* at ¶ 7-3(d).  The required physical profile for the initial award of plaintiff's grade and rank is 222221, *Pamphlet 611-21,* ¶ 10-45(b)(2)—the "1" required for psychiatric fitness.  Plaintiff's physical profile at the time of the exam was 131113.  AR at 112.  The physical profile also indicated plaintiff was not able to carry a weapon due to the "3" plaintiff received on the psychiatric component. *Id.*

On November 19, 2004, the informal physical evaluation board found plaintiff 20 percent disabled, assigning 10 percent disability ratings to both his thoracic back pain and PTSD. *Id.* at 101-02.  Disagreeing with this decision, plaintiff requested a formal PEB, which reviewed plaintiff's case on January 28, 2005, reevaluating "all available medical records and sworn testimony by [plaintiff]." *Id.* at 87.  The formal PEB determined that plaintiff's thoracic back was his only unfitting disability and assigned it a 10 percent rating. *Id.* at 87-88.  Further, disagreeing with the informal PEB, *see id.* at 101, the formal PEB found this disability was not combat-related, as the combat relationship was "tenuous at best" and "independent verification" was required. *Id.* at 87.

The formal PEB forwarded the case to the United States Army Physical Disability Agency, *id.* at 17, which affirmed the PEB's findings and recommendations on March 9, 2005, *id.* at 14.  On April 30, 2005, plaintiff was honorably discharged from active duty. *Id.* at 991.

Plaintiff applied to the Physical Disability Board of Review for review of the USAPDA's decision on September 11, 2009. *Id.* at 984-85.  The Board of Review examined the record compiled by the first three bodies--the MEB, the PEB, and the USAPDA. *Id.* at 4-8.  It gave special attention to plaintiff's physical profile and weapons restriction, but found that they were

---

[2] Not otherwise specified.

not determinative of plaintiff's fitness for duty. *Id.* at 5. The Board of Review also found there was no firsthand evidence to corroborate or refute the combat-relation of plaintiff's disabilities. No documents substantiating plaintiff's combat action, such as Purple Heart awards given to soldiers injured in combat, were listed. *Id.* at 6. This led the Board of Review to "doubt" the history and severity of plaintiff's PTSD. *Id.* at 6. Considering this and other evidence in the record, the Board of Review determined plaintiff's PTSD did not render him unfit for service. *Id.* Overall, the Board of Review recommended no change in plaintiff's disability and separation determination. *Id.* at 7. The Secretary of the Army affirmed this decision on February 15, 2011, thus exhausting the administrative review to which plaintiff was entitled.

Plaintiff filed his complaint in the Court of Federal Claims on April 28, 2011. He alleges four errors: (1) that the informal PEB improperly rated his PTSD disability; (2) that the formal PEB's decision was arbitrary and capricious in finding that plaintiff's PTSD did not render him unfit and that his injuries were not combat-related; (3) that the USAPDA erred in upholding the formal PEB; and (4) that the Board of Review erred in not reversing the lower boards. Compl. ¶¶ A-D.

Based on these errors, plaintiff requests declaratory relief entitling him to a 50 percent rating for his PTSD and recognition that his injuries were combat-related. Compl. ¶¶ E, F. He also requests monetary relief in the form of retroactive and prospective retirement benefits called "combat-related special compensation" ("CRSC") and medical expenses. Compl. ¶¶ F, G, H. Finally, plaintiff requests that the court order defendant to pay the costs of this action, including reasonable attorney fees, and that the court order such other relief as it deems just and proper. Compl. ¶¶ F, G.

In their cross-motions and subsequent filings, the parties raise three issues. First, defendant argues that plaintiff fails to state a claim insofar as plaintiff alleges errors by administrative bodies other than the Board of Review. Plaintiff argues in response that it challenges the Board of Review's reliance on and endorsement of the decisions of those lower administrative bodies, not the decisions themselves. Second, defendant argues that plaintiff waived certain arguments about the findings of the formal PEB and PDA by failing to raise them before the Board of Review. In essence, plaintiff counters this waiver argument, contending that the Board of Review did consider and evaluate those findings. Third, the parties disagree as to whether the Board of Review acted irrationally by finding that plaintiff was (1) not entitled to a 10 A/C characterization for a combat-related injury and (2) not rendered unfit for service by virtue of his PTSD.

In reviewing this case, however, the court determined that there was a serious question as to its jurisdiction to rule on whether plaintiff had suffered a combat-related injury entitling him to a 10 A/C characterization. As explained more fully below, it was unclear to the court whether the 10 A/C characterization, and the determination of whether plaintiff suffered a "combat-related injury," was incidental or collateral to the award of some form of monetary relief as required by 28 U.S.C. § 1491(a)(2). Accordingly, in a letter to the parties the court asked for supplemental briefing. The parties subsequently responded—defendant taking the position that the court has no jurisdiction to rule on the denial of the 10 A/C characterization, and plaintiff taking the position that the court does have such jurisdiction.

From all this, four issues emerge that the court must now decide. First, the court must consider whether it has jurisdiction to consider the issues plaintiff raises, including whether plaintiff should have been awarded a 10 A/C tax break for a "combat-related injury." Second, if the court has jurisdiction, it must consider whether plaintiff fails to state a claim by challenging the decisions of the administrative bodies who reviewed plaintiff's case before the Board of Review. Third, if plaintiff has stated claims upon which relief may be granted, the court must decide whether to consider some of plaintiff's arguments as waived for failure to raise them before the Board of Review. Fourth, and finally, assuming plaintiff has any claims left after clearing these hurdles, the court must determine whether the Board of Review's decision was arbitrary, capricious, unsupported by substantial evidence, or contrary to law.

### III. DISCUSSION

**A. Jurisdiction**

As an initial matter, the court must consider whether it has jurisdiction to decide plaintiff's claims.

Pursuant to the Tucker Act, this court has jurisdiction over claims against the United States founded on a money-mandating source of law. 28 U.S.C. § 1491(a)(1); *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc). In addition, "[t]o provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing . . . correction of applicable records." 28 U.S.C. § 1491(a)(2). Together, these provisions confer jurisdiction to award money damages and equitable relief that is "an incident of and collateral to" the award for money damages. *See Gonzales & Gonzales Bonds and Ins. Agency, Inc. v. Dept. of Homeland Sec.*, 490 F.3d 940, 943 n.3 (Fed. Cir. 2007) ("While limited equitable relief is sometimes available in Tucker Act suits, the equitable relief must be incidental and collateral to a claim for money damages.") (quoting *Bobula v. U.S. Dep't of Justice*, 970 F.2d 854, 858-59 (Fed. Cir. 1992)).

Accordingly, this court clearly has jurisdiction both to award "retired pay" under 10 U.S.C. § 1201, *see Fisher*, 402 F.3d at 1174-75, and to order the military to place a service member in the proper "retirement status." *Haskins v. United States*, 51 Fed. Cl. 818, 823 (2002); *cf. Smith v. Secretary of Army*, 384 F.3d 1288, 1293 (Fed. Cir. 2004) (noting that "the Court of Federal Claims can offer a service member . . . an adequate remedy for a claim relating to military status . . . if the . . . claim constitutes a request for money (together with a request for ancillary equitable relief) and if the request is based on a money-mandating statute"); *Mitchell v. United States*, 930 F.2d 893, 896 (Fed. Cir. 1991) (permitting equitable relief necessary to complete the remedy). Because the "retirement status" of the service member is incidental to the amount of "retired pay" he is entitled to receive under 10 U.S.C. § 1201, *et. al.*, correcting that "retirement status" is within this court's power to grant equitable relief. *See Haskins*, 51 Fed. Cl. at 822. Thus, insofar as plaintiff requests that this court correct his "retirement status" along with awarding him "retired pay," this court plainly has jurisdiction over his claim.

But the court does not have jurisdiction to review the Army's decision to award plaintiff a "10 A/C characterization" for a "combat-related injury." As plaintiff acknowledges, that form of equitable relief is not collateral or incidental to the "retired pay" authorized by 10 U.S.C. § 1201, which says nothing about "combat-related injuries." Instead, plaintiff originally alleged in

its complaint that a 10 A/C characterization for "combat-related injury" is collateral or incidental to plaintiff's right to receive combat-related special compensation under 10 U.S.C. § 1413a.

Plaintiff now admits, however, that a 10 A/C characterization for "combat-related injury" is irrelevant to plaintiff's alleged right to received CRSC. *See* Pl.'s Letter of April 27, 2012. Indeed, there is no basis either in the statute or in Army regulations for concluding that the 10 A/C characterization has anything to do with plaintiff's entitlement to CRSC under § 1413a.

Rather, as the parties now both agree, there is one thing—and one thing only—that a 10 A/C characterization for "combat-related injury" concerns:  taxes.  Persons with these injuries may take advantage of favorable tax treatment, pursuant to of 26 U.S.C. (I.R.C.) § 104.  This limited significance of 10 A/C characterizations is made abundantly clear in the Army regulation authorizing the physical evaluation board's determination of whether a member is entitled to one. *See* Army Reg. 635-40, ¶ 4-19(k)(2)(b) ("In block 10C, the board will record its determination of *whether the injury was combat-related as defined by 26 U[.]S[.]C[.] [§] 104*.") (emphasis added).  To be sure, there is no authority for the PEB to make a determination on the non-tax issue of combat-related special compensation.

In a letter to the court, plaintiff concedes these points and proposes a novel legal theory -- that the court should "constru[e] 26 U.S.C. § 104 as a money mandating statute."  Accordingly, plaintiff contends that the court could use the statute as a springboard to consider the Army's denial of a 10 A/C characterization.  However, this is not an appropriate juncture for novel legal theories.

Plaintiff's request is inappropriate because it re-writes his complaint.  In his complaint, plaintiff requests "retired pay" and CRSC—not favorable tax treatment. Compl. at 14.  Because a supplemental brief is not the proper vehicle for amending a complaint, the court will not consider § 104 as a basis for jurisdiction.  *See, e.g., The Redland Co., Inc. v. United States*, 97 Fed. Cl. 736, 756 (2011) (declining to consider a breach of contract claim first raised in a motion for summary judgment when the plaintiff did not amend its complaint); *see* RCFC 15(a) (setting forth procedures for amending a complaint).  Plaintiff did not amend his complaint within the time required by this court's rules and the court is not at liberty to pretend plaintiff's complaint requests a remedy that it plainly does not.

The court is left without any jurisdictional basis for considering the Army's denial of a 10 A/C characterization.  Lacking jurisdiction to consider that issue, the court will now proceed to consider plaintiff's claim for "retired pay" and for correction of his "retirement status."

**B. Motion to Dismiss**

To the extent plaintiff clears the jurisdictional hurdle, defendant moves to dismiss plaintiff's challenges of the medical evaluation board's, the physical evaluation boards', and the USAPDAs' decisions for failure to state a claim. *See* RCFC 12(b); Def.'s Mot. at 9-12.  Under RCFC 12(b)(6), this court must dismiss a claim "when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002).

Defendant's argument is based on the rule that a plaintiff in this court may properly challenge only the decision of the highest administrative body to review that plaintiff's case. *See Van Cleave v. United States*, 66 Fed. Cl. 133, 135-36 (2005).  Decisions of lower administrative

bodies are not reviewable. *Id.* Plaintiff does not dispute this rule, but argues that, in reviewing the decision of the highest administrative body (here, the Board of Review), the court may consider whether that decision was based on arbitrary and capricious decisions of lower bodies, *see Fisher v. United States*, 72 Fed. Cl. 88, 95 (2006), at least if those arguments were not waived, *see infra* Part III-C. In reply, defendant indicates that it agrees. *See* Def.'s Reply at 3 ("[I]t appears that the parties agree that each of the decisions of the preceding boards are to be considered as relevant to the [Board of Review's] review, but are not an independent premise for a cause of action.").

Given that plaintiff has disavowed any claim directly challenging the decisions of lower administrative bodies, the court does not construe plaintiff's complaint as containing such claims. Rather, plaintiff is challenging the decision of the Board of Review, asking this court to review decisions of lower bodies only to the extent they are reflected in the Board of Review's decision. Defendant does not argue that such a challenge must be dismissed for failure to state a claim. Accordingly, the court will deny defendant's motion to dismiss.

**C. Waiver**

Defendant thereafter argues that plaintiff waived any argument that the formal PEB or PDA decisions were arbitrary and capricious because plaintiff did not challenge those decisions before the Board of Review. The court does not agree.

Although issues not raised before the administrative body whose decision is being challenged are ordinarily deemed waived, *see, e.g., Van Cleave v. United States*, 402 F.3d 1341, 1344 (Fed. Cir. 2005); *Maier v. Orr*, 754 F.2d 973, 984 (Fed. Cir. 1985), the rationale for that rule is that the agency whose actions are being challenged should have a chance to correct any errors during its administrative adjudicatory process. *United States v. L.A. Tucker Truck Lines*, 344 U.S. 33, 37 (1952); *Gant v. United States*, 417 F.3d 1328, 1332 (Fed. Cir. 2005). However, this rule does not apply when the administrative body whose decision is being challenged addressed an issue *sua sponte*. The mere fact that the issue before the administrative body was not raised by the parties does not put the issue beyond this court's review. *See Lebron v. National R.R. Passenger Corp.*, 513 U.S. 374, 379 (1995) ("[E]ven if this *were* a claim not raised by petitioner below, we would ordinarily feel free to address it, since it was addressed by the court below."); *Arobelidize v. Holder*, 653 F.3d 513, 517 (7th Cir. 2011) ("When [an administrative immigration board] addresses an issue on its own . . . it . . . makes little sense to deem an issue not raised by the parties unreviewable.").[3]

Here, the Board of Review considered and addressed the findings of both the formal PEB and the USAPDA. For instance, it discussed the basis for the formal PEB determination that

---

[3] The cases defendant cites are not to the contrary. In *Metz v. United States*, 466 F.3d 991 (Fed. Cir. 2006), the Federal Circuit held that plaintiff's failure to raise an issue before a military corrections board was waived, but crucial to the court's decision was the fact that the failure to raise the issue caused the board to "completely bypass[]" it. *Id.* at 998-99. Likewise, in *Conant v. Office of Personnel Mgmt.*, 255 F.3d 1371 (Fed. Cir. 2001), the Federal Circuit described the purpose of requiring a litigant to raise issues before an administrative board as being "to make the tribunal aware of the issue." *Id.* at 1375. Where the tribunal is aware of the issue and addresses it *sua sponte*, the failure of a party to raise it is of no consequence.

plaintiff's PTSD did not render him unfit, noting that the formal PEB had found plaintiff's symptoms more consistent with depression and anxiety than PTSD. Moreover, the Board of Review also discussed the findings of the USAPDA, necessarily sustaining that body's decision to uphold the findings of the formal PEB. In light of the Board of Review's consideration of these issues, the court concludes that none of plaintiff's challenges have been waived.

### D. Cross-motions for Judgment on the Administrative Record

The far more significant and, at times, vexing issue is whether the Board of Review acted arbitrarily, capriciously, or without substantial evidence in finding that plaintiff was not rendered unfit for service by PTSD. The parties raised this issue in their cross-motions for judgment on the administrative record.

In considering these cross-motions, this court must determine "whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." *A & D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006) (citing *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005)). Genuine issues of material fact will neither preclude a judgment on the administrative record nor require evidentiary proceedings. *Johnson v. United States*, 97 Fed. Cl. 267, 270 (2011). The resolution of these cross-motions is "akin to an expedited trial on the paper record." *L-3 Global Commc'ns Solutions, Inc. v. United States*, 82 Fed. Cl. 604, 608 (2008).

In seeking review of the Army's action, plaintiff's burden is a large one. This court is not a "super correction board" responsible for determining which service members are fit to serve. *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983); *Skinner v. United States*, 594 F.2d 824, 830 (Ct. Cl. 1979). The military makes this determination, and its administrators are presumed to have properly discharged their official duties absent clear evidence to the contrary. *See Sickels v. Shinseki*, 643 F.3d 1362, 1366 (Fed. Cir. 2011). Therefore, this court will review the Army's decision with a deferential eye and set it aside only if plaintiff can establish the decision was "arbitrary, capricious, unsupported by substantial evidence, or contrary to law." *Metz*, 466 F.3d at 998 (quoting *Porter v. United States*, 163 F.3d 1304, 1312 (Fed. Cir. 1998)); *Stine v. United States*, 92 Fed. Cl. 776, 791 (2010). Plaintiff must meet this burden with "cogent and clearly convincing evidence." *Dorl v. United States*, 200 Ct. Cl. 626, 633 (1973). Thus, plaintiff faces, if not a "triple whammy" of deference, *see Overstreet Elec. Co., Inc. v. United States*, 59 Fed. Cl. 99, 117 (2003), at least a double whammy: there must be *cogent and clearly convincing evidence* that the Army's decision was *arbitrary, capricious, unsupported by substantial evidence, or contrary to law*.

Moreover, this court's review "does not require a reweighing of the evidence, but a determination whether *the conclusion being reviewed* is supported by substantial evidence." *Heisig*, 719 F.2d at 1157. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938). To prevail in this case, plaintiff must "demonstrate that evidence was ignored or unreasonably construed." *Haskins*, 51 Fed. Cl. at 828 (citing *Thomas v. United States*, 47 Fed. Cl. 560, 569 (2000)).

In this case, the court will review the decision of the Board of Review that plaintiff was not rendered unfit for his duties by virtue of PTSD. This court must evaluate that decision in light of the Board of Review's specific task: to apply a "fair and equitable" standard of review to

the determinations of lower administrative bodies regarding whether a medical impairment amounts to a physical disability. To do this, the board must ascertain whether a service member's injuries are "of such a nature and degree of severity as to interfere with the Service member's or former Service member's ability to adequately perform his or her duties."[4] DoDI 6040.44, Glossary.

There is no dispute that the duties against which plaintiff's fitness must be measured are those of an infantry senior sergeant. The Department of the Army Pamphlet describes the "major duties" of an infantry senior sergeant as including primarily supervisory, advisory, and planning responsibilities. For instance, an infantry senior sergeant "*provides leadership, tactical and technical guidance and professional support* to subordinates," "*makes recommendations* to superiors," "*supervise[s]* the processing of operations and intelligence information," "*plans, coordinates, and supervises* activities pertaining to organization, training, and combat operations," "*edit[s] and prepare[s]* tactical plans, training materials," and "*coordinate[s]* implementation of operations, training programs, and communications activities." *Pamphlet 600-25,* ¶ 4-10(a) (emphasis added); *see also Pamphlet 611-21,* ¶ 10-45(a).

In light of these duties, the court does not agree with plaintiff that PTSD rendered plaintiff unfit because it prevented him from carrying a weapon. The duties above described do not contemplate the need for an infantry senior sergeant to carry a weapon. This is in stark contrast to the "major duties" of a regular infantryman, which expressly and unequivocally require the carrying of a weapon. *Pamphlet 600-25,* ¶ 4-4(a). In the absence of a regulation specifically requiring plaintiff to carry a weapon, the court is bound to defer to the judgment of the Army that plaintiff's weapons restriction did not prevent him from carrying out his duties.[5]

Moreover, contrary to plaintiff's argument, his psychiatric profile did not render him unfit for duty merely because it deviated from the profile for new entrants to his position. Plaintiff's psychiatric profile as a result of his PTSD required that he be evaluated, not that he be separated. The profile is not a replacement for the independent determination of fitness made by the physical evaluation board. The Army's "Standards of Medical Fitness" refer a soldier to a medical evaluation board if he deviates from his rank's physical profile. *See Army Reg. 40-501*, ¶ 3-3, 3-4. However, the regulations make clear that deviation "does not mean automatic retirement or separation . . . [t]he PEB will make the determination of fitness or unfitness." *Id.* at ¶ 3-4. In making that determination, the PEB must "consider the results of the MEB, as well

---

[4] That standard is similar to the one the formal PEB uses in determining fitness, focusing on the soldier's ability to "reasonably perform the duties of his or her office, grade, rank, or rating." *Army Reg.* 635-40, ¶ 1-1; *see also id.* at ¶ 4-17(a)(2) (requiring the physical evaluation boards to "evaluat[e] the physical condition of the Soldier against the physical requirements of the Soldier's *particular* office, grade, rank, or rating.") (emphasis added).

[5] Plaintiff relies on *Beckham v. United States*, 392 F.2d 619 (Ct. Cl. 1968) for the proposition that the military cannot shuffle members around to avoid discharging him. Here, unlike in *Beckham*, the administrative record does not reveal that the military shifted plaintiff around from job to job until one was found which plaintiff could perform notwithstanding his PTSD. Indeed, there is no evidence in the administrative record that anyone had diagnosed plaintiff with PTSD at the time he was ordered to report to his assignment with the transportation unit in Alabama.

the requirements of the Soldier's [rank and duty]," but nothing in the regulations to which the court has been referred require the profile series to control the fitness determination.

This conclusion is strengthened by the fact that the "physical profile" requirement plaintiff relies on is found in a subsection entitled "*Physical demands rating and qualifications for the initial award of [infantry senior sergeant]*." *Pamphlet 611-21*, ¶ 10-45. The use of the word "initial" implies the physical profile is a prerequisite to *becoming* an infantry senior sergeant, but not a necessary condition for *maintaining* that status. *Id.; see also* Dep't of the Army, *Pamphlet 600-25, U.S. Army Noncommissioned Officer Professional Development Guide* ¶ 4-10(b) (2008) (referring to the physical profile as a "prerequisite"). Moreover, the regulations do not say that an infantry senior sergeant who develops a condition which would have prevented him from *becoming* an infantry senior sergeant thereby loses the position he previously obtained. *Cf. Towell v. United States*, 150 Ct. Cl. 422, 1960 WL 8475, *8-*9 (1960) (interpreting earlier Army regulations governing fitness for an original appointment not to govern the plaintiff's fitness for retention); *Boraiko v. United States*, 146 Ct. Cl. 814, 1959 WL 7603, *3-*4 (1959) (same).

Finally, the Board of Review's analysis clearly is rational--not arbitrary or capricious. Relying on the statement of plaintiff's commanding officer, the Board of Review indicated that to the extent plaintiff could not perform his duties, it was due to his "physical impairments" (i.e., his back pain), rather than PTSD. AR 5. Unable to determine based on the available evidence the origin of plaintiff's PTSD, the Board of Review was "reasonably left with a degree of doubt regarding the historical accuracy of the psychiatric symptoms . . . ." *Id.* at 6. This reasonable doubt, the Board of Review explained, "softens the probative value of the stated severity of symptoms, which directly bears on the degree of impairment, which directly bears on the fitness determination." *Id.* Given this doubt, then, as well as the "fair and equitable" standard of review, the Board of Review concluded that it "did not find adequate justification for recommending PTSD as an unfitting condition." *Id.*

Based on the evidence in the administrative record, the court is in no position to dispute this line of reasoning. The court therefore cannot say that the Army acted arbitrarily, capriciously, without substantial evidence, or contrary to its own regulations in declining to find plaintiff unfit based on his profile series.

## IV. CONCLUSION

Accordingly, defendant's MOTION for judgment on the administrative record is GRANTED and plaintiff's MOTION for judgment on the administrative record is DENIED. Defendant's MOTION to dismiss is DENIED. The Clerk is hereby directed to take the necessary steps to dismiss this matter.

**IT IS SO ORDERED.**

*s/ Lawrence J. Block*
Lawrence J. Block
Judge